The next case on our call the docket is agenda number four case number one one zero nine two zero people versus Marina Kladis. K-L-A-D-I-S. Counsel for the appellant. May it please the court. My name is John Nowak. I'm an assistant state's attorney from Cook County and I represent the people of the state of Illinois. Despite tendering everything to the defendant that's required in a misdemeanor case under Schmidt, the trial court sanctioned the people for not providing a video and barred all testimony regarding what occurred while that video was recorded. This was tantamount to a dismissal of this case. The facts that the trial court barred included the fact that the defendant had a strong odor of alcohol on her breath, that she had bloodshot and glassy eyes, that she had slurred speech, that she very loudly admitted to drinking that night, that she had trouble maintaining her balance as she walked to the rear of her vehicle, and her performance in failure of three field sobriety tests. The trial court barred all of this even though the people did nothing wrong under people versus Schmidt. We tendered everything that was required in this misdemeanor. Mr. Nowak, it's true that Schmidt was decided in 1974, right? That's correct, your honor. And squad car video recordings didn't even exist. Did they in 74? Correct. Okay. If Schmidt were decided today, do you think the court would have included squad car videotapes of the traffic stop on the list? No, your honor. I don't believe so. And the reason being is because the reason that Schmidt limited discovery to the five areas that it did was because it recognized, first to eliminate discrepancies, but most importantly recognized that with misdemeanors, there's such a high volume of misdemeanors while they're also at the same time, less serious than felonies. And to add an additional burden to include, say, squad car videos, but why stop there? Include any video that's got the defendant in it, like a police station video, a neighborhood camera video, videos from anywhere. That is just going to slow down the process considerably. So if there had been such... Yes, sir. Does it make a difference that the police officer mentioned the video in his report, made it a part of his report? No, your honor. That makes no difference as far as to whether it's discoverable under Schmidt. It was just simply the officer acknowledging and putting everything in his report. This is just another piece of evidence that videotape. As the appellate court's held in camp, it's just one source of evidence. The fact that it's in there doesn't mean that it's going to necessarily be preserved as part of discovery automatically. What about the fact the state agreed to give it to him to start with? Correct, your honor. When the defendant came into court on day 31 and made an oral motion for discovery and asked to include as part of that motion for discovery any sort of videos as well, the prosecutor agreed to do it. And certainly we have no problem tendering these videos in a particular case. If the defendant asks for it and it's available, the people also, especially in this case, would like to have had the video. Given the detailed report by Officer Gasky, that videotape would have more than likely been favorable to the people. And certainly the fact that we agreed to tender it doesn't somehow make it part of discovery under Schmidt. It's just a matter of collegiality, something that we would also like to see. And if it had been preserved, and if this had been requested and it hadn't been purged yet, certainly we would have gone to the police department as we did and we'd find out if it's available. But here again, your honors, while the people want the defendant to have a fair trial, but this trial should also be fair to the people too. And here we shouldn't be punished because the trial court here expanded discovery under Schmidt and relied on the felony discovery rules to do so. This squad car video does not fall within any of these categories under Schmidt. It's not a police report. Police reports sought in Schmidt were those containing the observations of the officer and statements by the defendant. And it's a police report prepared by the witness, by that officer. We tendered everything in that regard to the defendant. A squad car video is not prepared by the officer. It doesn't contain the officer's observations. It doesn't contain the defendant's observations. It is automatically generated when those squad car lights are turned on. It's just another piece of evidence. Moreover, it's attached to that windshield. It's not attached to the officer. Did the state prosecution team ever view the video? No, your honor. Prosecutor never saw it. Police officer, Gaske, never saw it. Any standards in Northlake regarding preservation of the tape? If so, were they complied with? They were complied with, your honor. The defendant attached to her brief the procedures of the Northlake Police Department regarding these squad car videos. And it's their policy to retain them for 30 days. But if they're not requested within 30 days, they're automatically purged. And that's exactly what occurred here, your honors. On day 31 that morning, no one had requested it. It was purged. And this is, again, because to require these police stations, especially these police departments in the suburban Cook County like this one, requiring them to preserve every video, whether it be squad car videos or any time there's a video of the defendant in the station, for instance, to preserve those ad infinitum until the end of this process is just going to slow down the whole misdemeanor judicial process. And that's exactly what this court was concerned about in Schmidt. Well, that's something that's done outside of the courtroom, isn't it? That's not a part of what happens in a courtroom. I don't know how it slows down the judicial process. Well, the whole part of as far as preservation, certainly preservation, but going through making sure that that's preserved, going through the whole process of getting that videotape. Again, in individual cases, it may not be an issue. For instance, here we were fined to If we're talking about we're going to require the police departments to start saving these videos for who knows how long. They don't have infinite amount of computer space if these are digitized. And if they're not, shelf space for each one of these hundreds of thousands of videos. It's just going to burden the judicial system in the sense it's going to burden these other agencies, the police officers, any sort of other state agency. And here, Your Honors, the concerns in Schmidt, again, have been there are no less here today, given the vast number of misdemeanors filed compared to versus felonies. But here, Your Honors, again, this also doesn't fall under any category in Schmidt. It's not evidence negating guilt under Brady. There's no showing that this was material exculpatory, which is required. And there was no due process violation because both the trial court and the appellate court agreed there was no bad faith here when it was purged. Counsel, how does someone demonstrate that it's exculpatory when the information is not available to view one way or the other? Certainly, Your Honor, and that was an issue in Youngblood was that there no one knew what when you don't know what that exact evidence is going to show, it's not something that's known to be exculpatory that's just merely been hidden by the state. It's something that's been lost or destroyed. And in that case, that's why there has to be a showing of bad faith. You've got to show that the state, for instance, would have known that this might be exculpatory. There might be some reason to show bad faith on the part of the people, on the part of the prosecution, on the part of the police department. And that's why there's that bad faith requirement when you don't know exactly what's going to be in it. And that's what was required under due process. Let me back up a bit, if I may, to a question that Justice Freeman asked, and you answered that the police officer did not view the tape. Correct. Okay. Do we know that of record? We do, Your Honor. Okay. We do, Your Honor. In one of the preliminary hearings in the civil side, which was then adopted for purposes of the criminal sanction, Officer Gaske testified that he had not viewed the video. But is that in this record? It is in this record, Your Honor. Thank you. It's in this record. Counsel, why was the 237 rule notice insufficient to preserve the videotape to begin with? Because that was filed under Rule 237, a civil rule that applies to civil cases. It was filed five days after she was arrested for the civil rescission hearing. And this court has held in People v. Moore that while these proceedings are interrelated, certainly, the rescission hearing versus the criminal side, the differences, as this court said, were, quote, very real, unquote. And filing a motion or a notice to produce under a civil rule in a civil case has no bearing, no preclusive effect on the criminal case. But if it were followed, then it would still exist, even for the civil case. It certainly exists for the civil case, Your Honor. And in Moore, this court held that a decision made in the civil rescission hearing has no preclusive effect on the criminal DUI case, even though they're interrelated. So certainly, if a decision made, a ruling made by the trial court in the rescission hearing has no preclusive effect on the DUI side, certainly a notice or a motion filed in the civil side has no preclusive effect on the criminal side. No, I know. But if it had gone to the police department to preserve for the civil matter, then it would still be in existence. Correct, Your Honor. And the trial court sanctioned the people in the civil rescission hearing for not preserving that video pursuant to that notion of produce, that notice to produce. And what is the distinction between the police report and the in-car video recording? What is the distinction between it, between the police report and the in-car video? The police report includes an after-the-fact summarization of the events that the officer observed. After the fact. After the fact. The officer comes back to the station and writes down in here 785 words, everything that occurred, not just during the time that that video was recording, but before and after, but also things that that video cannot capture. Certainly, obviously, the camera cannot capture the strong odor of alcohol on that defendant's breath. It's not going to capture her slurred speech. There was no microphone activated on this case. It's not going to see her bloodshot and glassy eyes. And so that video camera is akin to, say, another witness who was there. It's just sitting from a fixed position on the squad car windshield. Why do they take videos anyway if they don't use them? If the policeman never looked at it and no one looked at it? Correct, Your Honor. It's for several reasons. First, it's always an officer safety issue to have that camera there. So after the fact, we can see what happened. But, again, it's also, again, for evidentiary issues as well. That if need be, it could be a way for the trial court, if it's preserved, to look in forward and see what that camera saw. But, again, Your Honors, it's there simply as just an additional documentation of what happened. But the fact that it hasn't been tendered doesn't mean that then all evidence regarding what occurred that night has to be barred. It's just another piece of evidence. So it's there as an evidentiary gathering procedure. If the defendant requests it, we would agree in this case to tender it. The request came after it was already purged. You indicate that the Schmidt problem is that this would be unduly burdensome to have to, you know, keep these forever and produce them in all the cases, right? Hasn't the statute been changed, though? Hasn't the legislature recognized the importance of videotapes by now requiring law enforcement agencies to keep the videotape for 90 days unless the recordings are made part of an arrest or the recordings are deemed evidence in any criminal, civil, or administrative proceeding? And then the recordings must only be destroyed after a final disposition and an order from a court. Your Honor, is this the statute that the defendant cited in the brief as far as the eavesdropping statute? It sounds like it, yes. I mean, I'm not sure. It's 720 ILCS 5-14-3. Okay. I believe that's a different statute because the defendant cited the statute as an exception to the eavesdropping statute. But as far as that goes, Your Honor, I'm not sure. I'm not familiar with that statute, and I'm not sure if it's going to apply to misdemeanor cases, Your Honors. And that's really the important point here is whether it applies to misdemeanors. But, of course, at the time of this case, that wasn't in effect. That's true. But in the sense that the legislature appears, at least from my reading of the statute, to place a great deal of emphasis on videotapes and the storage of  And certainly, Your Honor, in felony cases with the greater deprivation of liberty, if the trial court orders it to be discovered or it's required in our statute, of course, it will be preserved. But when you consider the fact that if that statute does not apply, for instance, to misdemeanors, that there were over 327,000 new misdemeanors filed in 2009, that that whole additional process is going to be overly burdensome. If it only applies to felonies, that's one thing. But to apply it to misdemeanors is a whole other ballgame instead. You said that the trial court's sanction effectively was a dismissal of the charges. What other evidence did you have that you could have presented? Any other evidence? There's no other evidence, Your Honor. Officer Gaske's testimony was the bulk of the entire case. It was going to be the entire case. He's the arresting officer. There were no other witnesses at the scene other than the defendant or husband. And before the video was available to officers, that would have been all that was available then? Correct, Your Honor. If there was no video, if there had been no squad car video before any of that existed, right, it would have just been the officer on the scene who arrested him. Was the State able to get convictions then with just the officer's testimony? Yes, Your Honor. And that's the problem here is that if the trial court had not barred the testifying about everything that occurred during the time that video was recording, it could have easily obtained a conviction in this case, Your Honor. What the trial court did, though, was prevent the officer from testifying about anything while that video was recording. So he was limited to testifying everything he observed before he turned on the lights and after he turned them off when she was arrested in the police car. So that barred any testimony about the odor of alcohol, slurred speech, glassy eyes, failure to perform on these field sobriety tests. All of that was barred by the trial court. Mr. Nowak, let me back up again. You have made the argument at the distinction between the civil and the criminal, civil being the petition to rescind statutory summary suspension, am I correct? Yes. And maybe this is shown in the record. I'm not familiar to know this, but in Cook County is the petition to rescind where the notice to reduce, produce was filed, is that docketed in the same jacket file? In the criminal side, I'm not certain, Your Honor. I do not believe so, Your Honor. These are separate proceedings. It is the same prosecutor who is involved with both. But you don't know if it's actually docketed and held in the same case number. It, the case number for the civil rescission hearing does have, bear the same case number as the criminal side. The traffic number, the DUI number, whatever it is. I believe it's like Y, yeah, it's one of the YMs. I don't know if there's other ancillary traffic charges like improper lane. Right. It was just here focused under the DUI charge in particular, Your Honors. Without knowing for sure, but if it were all filed in the same jacket file, same prosecutor with that notice produced, that's not enough notice to say, hey, we want this tape? It certainly was noticed as far as the civil rescission hearing goes, and the people, the trial court sanctioned the people for that, and the people initially appealed it, but then voluntarily dismissed it. So the whole issue of whether the sanction was proper in the trial court, for the civil case, we don't dispute that. We're not arguing that on appeal. It's just that in the separate criminal case, certainly, yes, these are related cases, but as this court held and more, the differences are very real, and there's no preclusive aspect from one to the other. So, yes, all of the parties are the same. The judge is the same, the prosecutor, the defense attorneys are all the same, and that notice to produce, yes, there was a failure to produce that, and the trial court sanctioned the people for that, but that was not the same as a motion in the criminal case. One does not bleed over into the criminal side. There's got to be a separate motion, and that motion came on Day 31, and that's aside from the fact that these squad car videos simply are not discoverable under Schmidt to begin with, Your Honors. Finally, Your Honor, the sanction here was, even if this had been discoverable, and even if the defendant had requested it in a timely fashion before it had been purged on Day 31, the sanction was far too harsh. It barred everything about this case. It barred everything that the officer saw that established that she was driving under the influence of alcohol and beyond a reasonable doubt. The courts have held that if this court had had discretion, that exclusion of evidence in misdemeanor cases is so drastic that it should be applied only for willful or flagrant violations, and here that is simply not true. The trial court and the appellate courts agreed. There was no bad faith here. What kind of a sanction would have been appropriate? If this had been discoverable, Your Honor, assuming that, assuming it had been discoverable and there had been a proper timely motion, barring all the evidence was far too harsh. At most, the most severe sanction would have been to have an inference that that video would have been favorable to the defendant. But even there, that perhaps even goes too far. This was not something that was done in bad faith. This was not, this was at most negligent by the fact that this wasn't preserved. But again, the defendant didn't come in until Day 31 to ask for this in the criminal side. And so there should be no harsher sanction than simply having an inference in favor of the defendant. But again, even that would have been too far, given the fact that there was simply no bad faith here. In conclusion, Your Honors, a squad car video is not part of misdemeanor discovery under Schmidt, and Schmidt should not be expanded. For these reasons, and those in our brief, we ask this Court to reverse the judgments of the trial and the appellate courts and remand this case to the trial court for further proceedings. Thank you, Mr. Nowak. Mr. Maloney. Good morning still, Your Honors. May it please the Court. Briefly, first off, I want to thank the John Marshall Law School Pro Bono Group for their assistance in working on this case, especially Professor Ralph Rubner and Katie Anderson and Co-Counsel Lou Burns and Ralph Rubner. I find it somewhat disingenuous in the State's argument that for the sake of collegiality, they'll provide the tape to the defendant, but they won't do it under Schmidt. They're going to give the State, the defendant, something they believe they're not required to give to be friendly. That doesn't make any sense. I believe Justice Thomas is correct. Had Schmidt been decided now, a videotape would be included in Schmidt discovery. Well, that would be a policy question for this Court. And I think the Court would conclude that a videotape, the technology that's available for the videotape, would now be available to the defendant, including in a police report. Because what we have here is a police report that specifically refers to the videotape to be kept as evidence to be used later on. Interestingly enough, DUIs and summary suspensions, as stated before, are civil and criminal different things, but they're connected at the hip. What happens in one isn't controlling on the other under Moore, but in many ways it sets the stage for what's going to happen. Now, under the civil proceeding, the summary suspension hearing, a 230s notice was filed telling the State to preserve the videotape. Under the statute, 5-2-118.1, the opportunity for a summary suspension hearing. If the officer fails to appear at that hearing and was not subpoenaed, the State can proceed without the officer using the officer's official reports. Official reports have been determined to be the sworn report of the officer, the warning to motorists, the officer's police report, which also would include a video. The State can proceed on the SS hearing without the officer using all of this information. Now to say they're not going to tender it as part of the Schmidt discovery, I think, is not following that same logic. But you agree under Schmidt as it existed at the time that it was not discoverable under that case, right? No, sir, I don't. I think under Schmidt you could still say that the videotape is something that will negate guilt, and it's material exculpatory evidence. You know, Youngblood and Fisher talk about potentially exculpatory evidence, and they talk about items that have been destroyed that could have been subject to testing that might have shown something that was helpful to the defendant. The semen might have been potentially useful evidence. The drugs that were destroyed in Fisher might have been. In Fisher, remember, there was four different lab tests done showing that the items that were destroyed was in fact illegal drugs, and the testimony in Fisher was that the proper lab techniques had been used. So there the court said the destruction of the evidence in Fisher really was only potentially exculpatory. Isn't that true here? I thought the officer testified that he did not have his microphone turned on during the arrest. Would that not alter your argument regarding the significance of what is contained in the videotape? No, sir, because the microphone only would have caught maybe the speech of the defendant. The videotape is going to show any improper driving, as we've stated in our brief. The videotape will show the defendant's inability to produce a driver's license or inability to step out of the vehicle, maybe using the car for support as she walks to the back of the area where she conducted the field sobriety test. It will show the HGN test. Two years ago this court heard oral arguments on People v. McCowan on the Fry test of the HGN test, and it was argued at that point that the only way you can determine if the officer did the HGN test properly was to be able to view the video of the officer doing the HGN test. And the argument there was officers did not do the HGN test correctly following the NHTSA standards. And this court found that when they don't follow the NHTSA standards, then the HGN test cannot be used in the prosecution of these cases. The video here would show did the officer use the NHTSA standards for the HGN test. That's why the videos are so important, and they are under Brady and under Schmidt to help negate guilt. You've asked us to take judicial notice of the directives from Northlake Police Department and Chicago Police Department regarding the use of NGAR cameras. Has that been, have we indicated in any way that we would take judicial notice? No, sir, you haven't yet. What do you hope to, if we were to do that, what would you establish by our reviewing? Well, to show at the time of this arrest, Northlake had a policy that videos were to be obtained by the police officers according to their policy to be used as evidence in prosecutions of those who violate the law. Their also policy was to destroy it after 30 days. As Justice Feist said, there is a statute now that will apply to misdemeanor cases. This new statute and the eavesdropping statute requiring that the videotapes be kept for 90 days doesn't limit itself to felonies or misdemeanors or either. It's a blanket statement, a blanket statute. So now departments are to follow the public policy as set by the legislature to preserve these videos for at least 90 days. At the time of this case, though, Northlake had the policy to make the video. There's also the policy to destroy it after 30 days. Now, when the State's Attorney's Office got the 237 notice, as Justice Burke was asking, why wasn't that sufficient notice? The State's Attorney's Office in the Maywood Courthouse prosecutes Northlake DUIs on a semi-monthly or monthly basis. Certainly they would have been aware of the Northlake policy to destroy a tape after 30 days. And when they got the 237 notice, which is all part of the same docket file in the courthouse, there's not a separate one for the summary suspension hearing and a separate file for the criminal case. Everything is kept together. The confirmation of the summary suspension from the Secretary of State is put in the criminal file to determine whether the summary suspension should proceed. Well, then, when the State's Attorney's Office got the 237 notice, they should have called up Northlake, sent them a letter, done something, save this tape. We're telling you to do this now. Not wait until day 31, which happened to be the first court date. At that time, agree to give the tape, only to find out later it was destroyed at 4 a.m. that day, pursuant to the Northlake policy, which, again, the State's Attorney should have known about. Back to the negating of guilt under Schmidt and Brady, doesn't Brady require that there be knowledge on the part of the State that the tape would be exculpatory? And since they didn't view it, they couldn't have knowledge, could they? Actually, Brady says bad faith is not an issue. Youngblood talks about bad faith. And in Youngblood's case, to review it back, Youngblood talked about potentially exculpatory evidence. And again, in Youngblood, there were three justices that said the defendant needs to show bad faith. In Youngblood, there were three justices that dissented that said the defendant does not need to show bad faith. Justice Stevens joined with the first three justices in saying that you don't need to show bad faith every time. In this particular case, I'll go along with the other three, but I'm not going to say that bad faith needs to be, that there's exclusion of bad faith is required in every case. And he reiterated that point again in a concurring opinion with Fisher. And on the separate but related issue, your position is 237 notice filed in a civil case in which sanctions were rendered, right? Yes, sir. And that put the State on notice to preserve the videotape in the criminal case, but you don't dispute that there was the motion regarding the videotape in the criminal case occurred after the destruction. That's correct. The 237 notice put them on, told them to keep the videotape on this case, which was filed five days later. The oral discovery for Schmidt discovery was made on the first court date, which was day 31. The obligation runs to the State in the separate and related civil case to then take action in the criminal case, but no obligation on the part of the defendant to file something in the criminal case prior to the destruction in this case? Well, I don't think the defendant is obligated to file the 237 notice even prior to the summary suspension hearing. In many cases, Justice Thomas, petitions to rescind aren't filed until the first court date. You're not required to file one immediately. You have to file one within 90 days of the arrest, but many times discovery is not requested until the first court date. No, but in this case, they did. But in this case, the defense counsel did make the 237 notice five days later, but did not issue a subpoena. But the issue is, again, as Justice Burke was asking, that's sufficient notice. It puts them on, tells the State to keep this tape. And another problem with what the State is arguing is when Judge Wise in the trial court ruled sanction on the civil case and then said, I'm going to apply that same sanction on the motion to caution the criminal case, I think the State effectively waived any argument it's making here. The State could have put on questions of the petitioner. She testified under oath. She was at a wedding. She consumed three beers. She was not intoxicated, she said. They didn't ask her any questions. And Judge Wise said, you can ask questions if you want. The State could have asked her a myriad of questions. When was your last beer? Was it five minutes before you left? Do you often drink three beers and not feel infected? How do you know you don't smell like alcohol? You had three beers. You must smell like alcohol. Are your eyes bloodshot? Were you speaking in a slurred fashion? And then, excuse me, the barring of the officer's testimony because of the video is not an invitation for petitioners and defendants to commit perjury. The State is telling you that this is a clear-cut case. Had the video been there and the officer had been allowed to testify, it would have been an easily finding of guilty. Well, we don't know that. Maybe the video would not have comported with what the officer's police report says. But the officer, I think, could have been called on the motion to quash, and he could have testified as an impeachment witness against Romina Kladys. When he was barred originally from putting something on, I said this is not an invitation to perjury. Had the State done that, they could have put the officer around to testify that she was not being credible as to how she did on her driving, the HGN test, the field sobriety test. And if that motion or that argument had been made at the trial court level, then Judge Wise would have made a ruling. I think he would have allowed it in, but I don't know. I'm speculating. Counsel, have you encountered any case where we have addressed a similar situation? As to what? Well, as to whether a discovery request in a civil case is sufficient or insufficient to have any implication on a criminal case. I don't know of any cases offhand, Justice. As I said, the DUI and subway suspension is kind of an enemy. They're very unique. You're not often going to have a separate criminal matter in association with a civil case. The only thing I can think of is a forfeiture action where there's a criminal case pending and a civil forfeiture case. Both of these are going to be handled by the State's attorney, who is the agent for the State. A discovery made in the civil forfeiture case, I think, would put the State on notice if it's seeking information that might be also discoverable in the criminal case. Off the top of my head, that's the only example I can come up with. As far as you know, we're writing on a clean slate. That's correct. Right. I think it's important to remember that DUIs are treated very seriously by the legislature, and the public policy here is to keep our roads safe and to punish the guilty, but to be sure the innocent are not punished. A video of the incident is worth more than a thousand words. A photograph of a victim in a domestic violence case is going to be kept by the State as evidence later. The photograph itself isn't evidence. It's what the victim looked like when the officer got there. The State and the police are not going to destroy a photograph of a victim in such a matter, or would they destroy the photograph of criminal damage to property. This is evidence they're going to collect to be used in the prosecution of the person who violated the law. Well, a video is the same, but nothing more, but a thousand little photographs of the scene of what happened at the time. Was there any testimony from those who keep the videotapes about their policy and how in their efficiency at the end of 30 days they automatically destroy, or is there something about this case that with issue raised that perhaps this seems a little bit unusual, defies imagination that the city is this efficient, and on the 31st, 35th day they destroy. Well, again, how do we ever show bad faith? I don't think there is any bad faith. They had a policy to destroy them after 30 days. What seems to me to be a very quick turnaround on possible evidence. You know, the police officer doesn't get to determine if the tape is exculpatory. That's for the state's attorney's job. But to destroy something 30 days after the arrest when under Supreme Court Rule 504 the first court date might not be for 57 or 58 days seems to be a premature act on the part of the department. And that's why I think the legislature has addressed that by amending the eavesdropping statute requiring that these videos be kept for at least 90 days and then not even be destroyed without a further order of court. Mr. Maloney, I have a hard time understanding why videos are even taken then if someone doesn't ever look at them. They keep them for 30 days and will now 90 days in some situations. If a DUI ticket is given, then why wouldn't the state's attorney look at it before they go to court? Even though you're trying to separate civil and criminal matters, the tape itself would be helpful or not helpful. I mean, if they chose what the state seemed to say to me or to us is that they can choose whether to watch it or not in any situation. Well, I agree. That's what the state is seeming to say. When the state gets to label what evidence is important and what evidence is not, then it takes away from the finder of fact what the ultimate truth may be. The videotape is being prepared to be used as evidence in the prosecution of the case. That's the North Lake Police Department policy. It is incumbent upon the state to know that North Lake destroys these after 30 days and to obtain and request this information at the same time as they do the police reports. There's an arrest. The police report, the tickets are sent to the clerk. Police reports are sent to the state's attorney's office to be usually given out in discovery on the first court date. The police report says a video was made to be retained as evidence. The state should then call up and say, I want to see this video, bring it in now, save it, do whatever, have it available on the first court date. It is incumbent upon the state to keep the video because the video in many of these cases is going to show the intoxication of the defendant. And even on that point, and the state somewhat even agreed on that in page 8 of its brief in the appellate court. In the appellate court brief, the state said, the videotape and the officer's observations of defendant's apparent intoxication while videotape was recording constituted the people's entire proof of intoxication. Now, given the state has that position, Justice Burke, I agree. You'd think they would really want the tapes. As Mr. Nolak said, with the tape, this would have been an easy case. Well, then, be sure you save the tapes. And you should have saved the tape here. You were told about it. And if the defense counsel had not done the 237 notice until after the tape was purged, then it would be a different argument. I think the notice here is the really important thing. That's what Judge Wise found. The state was on notice in the civil case, and then he just moved that over because the issue was basically the same on the motion to quash, the reasonableness of the arrest and the reasonableness of the stop. Those are two issues that are always going to be argued in summary suspension and DUI cases. The reason for the stop, which triggers the suspension, is going to be the same reason for the stop, which triggers the criminal DUI charge. The reason to place the person under arrest, which triggers the summary suspension, is going to be the same reason for a motion to quash on the criminal case. The blood alcohol test that you submit to as part of the summary suspension hearing is the same blood alcohol test that's going to be used in the prosecution of the DUI. Finally, I don't believe that the distinction here was so harsh. As I said, the state could have proceeded on the motion to quash by asking Clattis many questions, and then I think they could have put the officer on to impeach her. They could have tried that. They didn't, so I think they waived that argument here. But as Judge Wise said, this was the third time in the last two weeks where he'd had a destruction of tape problem. And so he felt that the proper sanction to advise the state's attorney's office what they needed to do when they have notice to save a tape is to impose this sanction. The sanctions are always discretionary with the court. Even if he had taken the negative inference, I think the result would have been the same. Maria Clattis said she did not fail the test. The officer said she did. The tape was destroyed. He could have gone along with Maria Clattis, but we don't know. But, again, I still think that the discretion he showed in barring the officer was not overly harsh or inappropriate in this matter. You're still not arguing bad faith, even though you have argued that the state has an obligation, knowing that Northlake destroyed the tapes or purged the tapes after 30 days, that they had an obligation to get that and preserve it. You're still not making a bad faith argument. No, sir, we're not, because, again, the bad faith only applies to potentially exculpatory evidence. It's our argument that this is video smiths under Schmidt because it negates guilt, and also it's part of a police report that could be used in the summary suspension as part of the officer's official reports. So either way, the video is discoverable, especially because we believe it's material exculpatory evidence. We know what's on there. The facts of it, what's on the tape, are not unknown or undisputed, unlike the semen in Arizona vs. Youngblood. Would it have shown something? We don't know. Well, the video, we know what's on the video. It's the scene of the arrest. It's undisputed what's on there. It may be subject to different interpretation, like an instant replay call in a football game when the referees may disagree, but they can look and see if the person's inbounds or out-of-bounds and make the determination. Without that video, it's one ref from one side and one ref from the other. Well, it was said, who do you believe? The video helps. It helps extremely in these matters. My time is up. I apologize. Thank you. Thank you. Thank you. Your Honor, this defendant never argued in her brief before this court that she meant to be expanded. And the trial court certainly had no discretion to expand it. But as for trying to shoehorn this into evidence negating guilt, there's a fundamental misunderstanding about what Brady requires. It requires a showing that that video, that that evidence would have been materially exculpatory, shown that it would have exonerated her, shown that she was not guilty. No one knows what this video shows. Defendant claims that we know what it was. We heard the defendant. We see the officer's report. Well, that's certainly, they're at odds. They're at odds. You look at that police report. It has nothing similar to what the defendant testified to at the civil rescission area. She doesn't talk about how she had slurred speech and an odor of alcohol in her breath. She doesn't talk about how she had glassy bloodshed eyes. She claims she performed these three or four percent of Brady tests admirably. And Officer Gaske obviously disagreed. Here, Your Honors, as far as back to the criminal statute that Justice Tice cited, that is indeed the criminal, the statutory statute have to be doing about eavesdropping. And that section that they cite in the brief and that Justice Tice referred to has to do to an exception to the eavesdropping statute, which means, and it says specifically that those recordings that are going to be preserved, recordings made simultaneously with the use of an in-car camera of an oral conversation between the officer and the other person, an oral conversation, because this is an exception to the eavesdropping statute. Wouldn't apply here. There was no recording of an oral conversation. Officer Gaske testified that his microphone was off. So if that microphone's off and there's no oral conversation, it doesn't fall within this statute that Justice Tice cited. How do you address Mr. Maloney's point with respect to you could have attempted to call the officer for impeachment purposes? Your Honor, certainly the trial court invited the trial prosecutor to do so. The trial prosecutor refused to do so because the trial court, the trial prosecutor was under the impression that there was no jurisdiction at that point. The trial, the prosecutor was filing a notice of appeal and didn't believe that there was any jurisdiction. But that point has been mooted at this point, at this stage, by the supplemental record filed by the defendant before this court. We know exactly what Officer Gaske would have testified to if we put him on in rebuttal. He's wrote 785 words about what he observed, and that's what he would have testified to. Everything from her odor of alcohol, her slurred speech, glassy eyes, and her failure on all these performance tests. So the fact that the prosecutor didn't call and cross-examine the defendant about that or call a witness in rebuttal is moot. We know exactly what he would have testified to. And here, as for the notice produced, again, Your Honors, there is a significant, very real difference, as this court held in Moore, between these two procedures. Let's say that a motion, a notice produced in the civil side has any effect, any preclusive effect, on the criminal side goes against directly what this court held in Moore. If you cannot have a trial court ruling to have any preclusive effect from the civil case to the criminal case, certainly a notice filed will not have preclusive effect on the criminal side. Do you agree with your opponent that this situation has never been addressed by this court? In other words, the implication of a civil case onto a criminal case? Absolutely not, Your Honor. Moore hits this issue precisely when it talks about how there's no preclusive effect from one to the other. It didn't have to do with discovery. It had to do with whether a decision made in the civil rescission hearing would then have preclusive effect on the criminal side. But certainly it follows that if that's true, a notice to produce on the civil side doesn't have any sort of preclusive effect on the criminal side. Defendant here even acknowledged here in oral argument that she could have subpoenaed these tapes. She certainly has the ability to do that in a misdemeanor case. If the defendant really wants that tape, can get in and get a subpoena issued. The trial court itself recognized that when explaining at open court that everyone knows that these videos are purged in 30 days, and if you really want that video, you need to get down and get a subpoena issued within those 30 days. And as far as to why the prosecutor here didn't look towards the video and why doesn't the prosecutor do that, again, that goes right into the fact that there are just so many misdemeanors. There are so many DUI cases that these trial systems, they don't have time to sit down and review videos in every single case. And as far as the videos being purged as opposed to, say, a photograph of a domestic violence victim, the difference is that in a domestic violence video, a domestic violence case, that picture is taken specifically to preserve evidence. Whereas with these in-squad car videos, those are running every time those squad car lights come on. It's not necessarily, a criminal charge is not necessarily going to flow from every time that video is recorded. And that's the point is that the ones that do get a DUI ticket, wouldn't those be automatically saved? No, Your Honor. No, because they have all this policy. And that's, again, this is just part of, with the sheer volume of these videos, because they are created every time those lights are flipped on, that Northlake has a policy, much like other communities, to purge these after 30 days. And, again, as defendant acknowledges, she could have come in and gotten a subpoena if she really thought this was important. But here, Your Honors, this is not materially exculpatory because nobody knows what it is. And that is the standard under Brady. You can't stand up here and speculate about what the video would have shown, would it have agreed with the defendant's version, would it have agreed with the officer's version. No one saw this video. As a result, it cannot qualify as evidence under Brady. For all of these reasons, Your Honors, we ask that this Court reverse the judgments of the appellate court and the trial court and remand this case to the trial court for further proceedings. Thank you, Counsel. Case number 110920, People v. Marina Clattis, is taken under advisement as agenda number four.